

U. S. Department of Justice

*United States Attorney*
*Northern District of Iowa*

---

*600 Fourth Street*   *712-255-6011*
*Suite 670*   *712-252-2034 (fax)*
*Sioux City, IA 51101*   *712-258-4761 (tty)*

November 26, 2019

Michael K. Williams
Attorney at Law
P.O. Box 281
Hinton, IA 51024

    Re:    *United States v. Cristobal Francisco-Nicolas, CR19-4045-LTS-KEM*

Dear Mr. Williams:

    This letter will serve as a memorandum of a proposed plea agreement between the United States Attorney's Office for the Northern District of Iowa and Amy Francisco, defendant. All references to the "United States" or "government" in this proposed plea agreement refer to the United States Attorney's Office for the Northern District of Iowa and to no other governmental entity. This plea offer will expire at 5:00 p.m. on Monday, December 2, 2019, unless otherwise extended by the government. The government has made no prior plea offer in this case.

## CHARGES AND PENALTIES

    1. *CF-N* Defendant will plead guilty to <u>Counts 2 and 3</u> of the Indictment filed on July 17, 2019. <u>Count 2</u> charges Encouraging And Inducing an Alien to Enter or Reside in The United States in Violation of Law, pursuant to Title 8, United States Code, Section 1324(a)(1)(A)(iv). <u>Count 3</u> charges Unlawful Possession of Identification Documents, in violation of Title 18, United States Code, Section 1546(a).

    2. *CF-N* Defendant understands that <u>Count 2</u> of the Indictment is punishable by the following maximum penalties: (1) not more than 5 years' imprisonment without the possibility of parole; (2) a fine of not more than $250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of up to 3 years.

    3. *CF-N* Defendant further understands that <u>Count 3</u> of the Indictment is punishable by the following maximum penalties: (1) not more than 10 years' imprisonment without the possibility of parole; (2) a fine of not more than



Government Exhibit
1
Case
19-CR-4045

$250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of up to 3 years.

4. C F N Defendant understands restitution and a term of supervised release following incarceration may be imposed in addition to any other sentence. Defendant further acknowledges that, if defendant violates, at any time, any condition of supervised release, defendant could be returned to prison for the full term of supervised release and the Court is not required to grant credit for any amount of time defendant may have successfully completed on supervised release. Defendant also understands the U.S. Sentencing Guidelines will provide advisory guidance to the Court in determining a sentence in this case.

5. C F N At the time the guilty plea is entered, defendant will admit that defendant is guilty of the charge specified in Paragraph 1 of this agreement. After sentencing, the government will move for dismissal of any remaining counts, Count 1. The U.S. Attorney's Office for this District will file no additional Title 8 immigration-related, Title 18 identification document-related, and Title 18 human trafficking-related criminal charges based solely upon information now in our possession. If this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution. The defendant also will withdraw and not pursue his motion and brief to dismiss the indictment filed October 14, 2019.

6. C F N Defendant understands and agrees defendant has the absolute right to plead guilty before a United States District Court Judge. However, if convenient to the Court, defendant agrees to waive and give up this right and to plead guilty before a United States Magistrate Judge. Defendant understands defendant will not be found guilty unless the United States District Court Judge accepts the plea of guilty or adopts a recommendation of the Magistrate Judge to accept such plea. Defendant agrees to execute the attached consent to proceed before the United States Magistrate Judge.

## POTENTIAL IMMIGRATION CONSEQUENCES

7. C F N Defendant understands that pleading guilty may have consequences with respect to defendant's immigration status in the United States. If defendant is not a citizen of the United States, one such consequence could include immediate removal from the United States upon completion of any period of incarceration. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Similarly, if defendant is a naturalized citizen of the United States, a conviction in this case

could lead to defendant being denaturalized as a United States citizen and subject to removal from the United States. If defendant is removed from the United States for any reason, a conviction in this case may also cause defendant to be denied admission to the United States in the future. No matter defendant's present immigration status, the decision whether defendant would be removed from the United States as a result of a conviction in this case would be for immigration authorities and the immigration court to ultimately determine, and is not for the district court (the judge in this case) to decide. Defendant understands, therefore, that neither defendant's attorney or the district court can predict to a certainty whether defendant will be removed from the United States or denied admission to the United States in the future as a consequence of defendant's plea of guilty. Defendant nevertheless affirms defendant wants to plead guilty, even if the guilty plea may adversely impact the outcome of any pending or subsequent immigration proceedings.

## NON-COOPERATION

8. *CFN* Defendant understands and concedes that, although defendant is not required by the terms of this plea agreement to testify before any Court or grand jury, the United States may take the prescribed actions under 18 U.S.C. § 6001, *et. seq.* or any other applicable provision of law to compel defendant's testimony. Defendant agrees that, if defendant refuses to testify after being granted immunity and ordered by the Court to testify, defendant may be found to be in contempt of court and may be punished in accordance with Federal Rule of Criminal Procedure 42 and 18 U.S.C. §§ 401 and 402. Further, the United States Attorney's Office shall be permitted to pursue any other action available to require defendant's testimony or punish defendant's refusal to testify subsequent to any order requiring defendant to testify. Defendant understands and agrees that, because defendant is not cooperating with the government, the United States will not recommend any decrease under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law.

## STIPULATION OF FACTS

9. *CFN* By initialing each of the following paragraphs, defendant stipulates to the following facts. Defendant agrees these facts are true and may be used to establish a factual basis for defendant's guilty plea, sentence, and any forfeiture. Defendant has been advised by defendant's attorney of defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant waives these rights and agrees this stipulation may be used against

defendant at any time in any proceeding should defendant violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the Court. Defendant agrees that the stipulation below is a summary of the facts against defendant and does not constitute all of the facts the government would be able to prove at trial and may be able to prove to the Court in accordance with this agreement.

    CFN A. Between at least May 28, 2019, and about June 19, 2019, in Sioux City, Woodbury County, Iowa, which is in the Northern District of Iowa, and elsewhere, Cristobal Francisco-Nicolas, defendant, did encourage and induce an alien, a minor female with the initials (ABF), to enter or reside in the United States, knowing and in reckless disregard of the fact that such coming to, or entry, would be in violation of law, and did aid and abet said violation of law. The defendant knew ABF was a citizen of the Republic of Guatemala, and that ABF had no permission to enter or reside in the United States (U.S.).

    CFN B. The investigation by law enforcement revealed that defendant and his wife, co-defendant, Amy Francisco (AF), encouraged and induced ABF and her father, Fernando Bartolo-Francisco (FBF) to enter or reside in the United States. The reason defendant and AF brought ABF and FBF to the United States was that ABF agreed to be a surrogate mother to provide a baby to the defendant and AF. The defendant and AF would pay for all expenses for ABF's pregnancy, birth, and adoption of the baby. It was also agreed that defendant and AF would help FBF find work in the U.S. to help support his family in Guatemala. Further, ABF was promised she could further her education and work to earn money while in the U.S. ABF and her father, FBF, are citizens of the Republic of Guatemala. ABF and her father, FBF, had no permission to enter or reside in the U.S. Defendant and his wife, AF, knew both ABF and FBF were citizens of the Republic of Guatemala and had no permission to enter or reside in the U.S.

    CFN C. In the spring of 2019, defendant and AF communicated with ABF and/or FBF by telephone and arranged for ABF and FBF to enter and reside in the United States in the following manner: ABF and FBF would use the services of a smuggler to get from Guatemala to the U.S./Mexican border. Once at the border, ABF and FBF were to cross

        into the United States by crossing the Rio Grande river. Once in the United States, ABF and FBF were to wait until they were picked up by U.S. Customs and Border Patrol (CBP). Once they were picked up, they were to tell the U.S. authorities that ABF was a minor, and that both FBF and ABF were seeking asylum. FBF and ABF were then to inform authorities that they had contacts in the United States who would provide them a place to stay while their asylum request was processed. ABF and FBF were to provide authorities with Defendant's wife's name (a pseudonym for defendant's wife was used) and address (in Sioux City) and telephone number. Defendant and AF believed that ABF and FBF would be allowed to travel to Sioux City, and reside with them if ABF and FBF followed the plan. It was agreed defendant and AF would pay the smuggler and the other travel expenses of ABF and FBF. It was also agreed defendant and AF would pay for expenses such as food, clothing, phones, and other items after ABF and FBF arrived in Sioux City. In light of the foregoing agreements, ABF and FBF decided to come to the United States.

CF/D. ABF and FBF did follow the plan as set forth in paragraph C. They left Guatemala on or about May 25, 2019, and were arrested by CBP on May 29, 2019. On or about May 31, 2019, after authorities allowed ABF and FBF to travel to Sioux City, defendant and AF arranged for them to take a flight from Texas to Omaha, Nebraska, where defendant and AF picked them up, and drove them to Sioux City. Defendant and AF paid for the flights with a credit card, and provided their address, 3628 Hamilton Boulevard, Sioux City, Woodbury County, Iowa, to CBP when CBP called to confirm the contact information provided by ABF and FBF.

CF/E. From May 31, 2019, through June 4, 2019, ABF and FBF lived at the residence of the defendant and AF, 3628 Hamilton Boulevard, Sioux City, Iowa. After arriving at the residence of the defendant and AF, FBF was told by defendant that FBF owed him and AF 18,000 Quetzales, for expenses associated with smuggling FBF and ABF into the United States. On June 4, 2019, ABF ran away from the residence at 3628 Boulevard in Sioux City. Neither defendant, nor AF reported ABF missing. ABF was found by a citizen walking in Sioux City as if she was lost, and helped ABF contact the Sioux City Police Department. ABF told members of law enforcement she was

forced by defendant to have sexual intercourse with him, and that is why she ran away. ABF also told law enforcement she was forced by defendant to have sexual intercourse with him at the residence of the defendant and AF. ABF told law enforcement she did not know the address of the residence. Law enforcement had DNA testing done of a sample from defendant and a sample from ABF's underwear. The Iowa DCI Laboratory found defendant's DNA in semen found on ABF's underwear.

C̶F̶NF. On June 19, 2019, law enforcement executed a lawful search warrant at the residence of defendant and AF at 3628 Hamilton Boulevard. One of the items seized from the residence was a computer. Pursuant to a lawful search warrant for the contents of the computer, law enforcement found a surrogacy contract between ABF, defendant, and AF which was created May 25, 2109. This was before ABF and FBF crossed the U.S. Border on May 29, 2019. The surrogacy contract was not signed, but included language for ABF to be impregnated by defendant, and defendant and AF to adopt the baby after birth. The defendant and AF were unable to have a child by natural means. A second item seized from the residence on June 19, 2019, was an identification document prescribed by statute or regulation for entry into or evidence of authorized stay or employment in the U.S., that is, a State of Nebraska identification card bearing a "License number" with the last four digits "8393", which document defendant knew had been forged, counterfeited, falsely made, and otherwise unlawfully obtained. The State of Nebraska identification card had the defendant's picture on it, but used the name Jose Maria Lozano, Jr. The State of Nebraska identification card is counterfeit because law enforcement found that there was no record of this identification card. The State of Nebraska identification card was located by law enforcement in the defendant's bedroom closet inside a safe. The defendant knew his name was not Jose Maria Lozano, Jr. and that the State of Nebraska identification card was not lawfully assigned to him by the government.

C̶F̶NG. On June 19, 2019, after receiving Miranda warnings, defendant told law enforcement that in the spring of 2019 he made all the arrangements and paid for ABF and her father, FBF, to be smuggled by a coyote from Guatemala to the U.S. Border. The defendant spoke with ABF by phone to let her know the arrangements. The defendant

paid the coyote by sending money from the U.S. to Guatemala through a money wire service. The defendant knew arranging and paying a coyote to smuggle ABF and her father, FBF, was a mistake.

CFN H. Defendant was born on September 18, 1981, in Santa Eulalia Huehuetenango, Guatemala. Defendant is a citizen of Guatemala. On February 8, 2014, the defendant, after application with the U.S. Immigration authorities, received status as a permanent resident alien.

## SENTENCING PROVISIONS

10. CFN Defendant understands and agrees to be sentenced based on facts to be found by the sentencing judge by a preponderance of the evidence and agrees facts essential to the punishment need not be (1) charged in the Indictment; (2) proven to a jury; or (3) proven beyond a reasonable doubt. The Court may also consider other information concerning the background, character, and conduct of defendant.

11. CFN During plea negotiations the parties may have discussed how various factors could impact the Court's sentencing decision and the determination of the advisory sentencing guidelines range. The parties agree, however, that discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the Court. Defendant understands the Court is not bound by the stipulations of the parties, nor is it bound by the sentencing range as determined pursuant to the sentencing guidelines. This plea agreement provides for no guarantee concerning the actual sentence to be imposed. Defendant further understands defendant will have no right to withdraw defendant's guilty plea if the sentence imposed is other than defendant hoped for or anticipated.

12. CFN The parties stipulate and agree the United States Sentencing Guidelines should be applied, at least, as follows:



    CFN A. **Base Offense Level – Smuggling, Transporting, or Harboring an Unlawful Alien (Chapter 2):** For <u>Count 2</u>, pursuant to USSG §2L1.1, the appropriate base offense level is 12.

    CFN B. **Base Offense Level – (Chapter 2):** For <u>Count 3</u>, pursuant to USSG §2L2.1, the appropriate base offense level is 11.

CF/C. **Role in the Offense (Chapter 3 adjustment):** Based on defendant's role in the offense, the parties agree defendant should not receive a role adjustment increase or decrease under USSG §§3B1.1 or 3B1.2. The parties understand that the parties' stipulation in this subsection is not binding on the Court.

CFN D. **Acceptance of Responsibility (Chapter 3 adjustment):** The United States agrees for purposes of USSG §3E1.1 that if defendant clearly demonstrates acceptance of responsibility for his offense, a **two-level** downward adjustment is appropriate.

CFN E. **Criminal History (Chapter 4):** No agreement has been reached regarding defendant's criminal history. The parties reserve the right to contest the Probation Office's determination of defendant's criminal history and criminal history category under Chapter Four of the sentencing guidelines. In addition, defendant understands that, if defendant's criminal history would result in a higher base offense level under any guideline, the government is free to seek such a base offense level.

CFN F. **Departure - USSG §5K1.1 and 18 U.S.C. § 3553(e):** The United States will not make a motion for downward departure under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law

CFN G. **Other Sentencing Matters:** The parties agree to recommend the sentences for Counts 2 and 3 to run concurrent. No other agreements have been reached, and the parties are free to litigate any and all other applicable adjustments, departures, or cross-references under the United States Sentencing Guidelines. No other agreements also have been reached concerning any variances of any kind from the advisory guideline range, in any amount, in either direction. However, the parties agree there are no grounds for a variance of any kind from the advisory guideline range, in any amount, in either direction. The parties understand that the parties' stipulation in this subsection is not binding on the Court.

13.*CFN* Defendant, defendant's attorney, and the United States may make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing, or any other proceeding related to this case, so long as the offer or comment does not violate any other provision of this agreement. The parties are also free to provide all relevant information and controlling authority to the Probation Office and Court for use in preparing and litigating adjustments, enhancements, or departures scored in the presentence report, including offering statements made by defendant at any time.

14.*CFN* The parties are free to contest or defend any ruling of the Court, unless otherwise limited by this agreement, on appeal or in any other post-conviction proceeding.

## CONDITIONS OF SUPERVISION

15.*CFN* If probation or a term of supervised release is ordered, the parties are free to seek whatever conditions they deem appropriate.

## FINANCIAL MATTERS

16.*CFN* Defendant agrees to pay a special assessment of $100 per Count for a total of $200 as required by 18 U.S.C. § 3013. Defendant may pay the special assessment to the Clerk of Court by using the enclosed payment coupon. Defendant or defendant's representative will send or deliver the special assessment payment to the U.S. District Clerk of Court, 320 Sixth Street, Third Floor, Sioux City, IA 51101. If payment is made in the form of a check or money order, it should be made out to the "U.S. District Clerk of Court."

## FORFEITURE OR ABANDONMENT

17.*CFN* Defendant agrees to voluntarily disclose, forfeit, abandon, give up, give away, and produce to the United States, or any law enforcement agency designated by the United States, prior to the date of sentencing herein, the following items, in any format, not validly issued to defendant:

A. Any real or fraudulent Social Security Account Number card, U.S. Passport or U.S. Passport Card, Permanent Resident Card or Alien Registration Receipt Card (Form I-551), Employment Authorization Document (I-766), Driver's license or ID card issued by a State or by federal, state or local government agencies or entities, U.S. Citizen ID Card (Form I-197), Birth Certificate (original or copy), Voter's

    registration card, financial documents, tax documents, and any other identification documents.

Defendant understands that, from this date forward, any local, state, or federal law enforcement agency may take custody of and use, dispose of, and transfer these items in any way the agency deems appropriate.

## FORFEITURE

  18 CFN Defendant agrees to forfeit and abandon any and all claim to items seized by law enforcement from defendant at the time of any arrest or search, including the search of defendant's residence on June 19, 2019, and the arrest and search of defendant on July 10, 2019. Defendant also waives any right to additional notice of the forfeiture and abandonment of such property. Defendant stipulates this plea agreement constitutes notice under Local Criminal Rule 57B(f) regarding the disposal of any exhibits or evidence related to this matter. Defendant understands that, from this date forward, any local, state, or federal law enforcement agency may take custody of and use, dispose of, and transfer these items in any way the agency deems appropriate.

## GENERAL MATTERS

  19. CFN Defendant shall not violate any local, state, or federal law during the pendency of this agreement. Any law violation, with the exception of speeding or parking violations, committed by defendant will constitute a breach of this agreement and may result in the revocation of the entire agreement or any of its terms. Defendant or defendant's attorney shall notify this office within 48 hours if defendant is questioned, charged, or arrested for any law violation.

  20 CFN If defendant violates **any** term or condition of this plea agreement, in **any** respect, the entire agreement will be deemed to have been breached and may be rendered null and void by the United States. Defendant understands, however, the government may elect to proceed with the guilty plea and sentencing. These decisions shall be in the sole discretion of the United States. If defendant does breach this agreement, defendant faces the following consequences: (1) all testimony and other information defendant has provided at any time (including any stipulations in this agreement) to attorneys, employees, or law enforcement officers of the government, to the Court, or to the federal grand jury may and will be used against defendant in any prosecution or proceeding; (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against defendant and to use any information obtained directly or indirectly from defendant in those additional prosecutions; and (3) the

United States will be released from any obligations, agreements, or restrictions imposed upon it under this plea agreement.

21. C F-N Defendant waives all claims defendant may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment to the Constitution. Defendant also agrees any delay between the signing of this agreement and the final disposition of this case constitutes excludable time under 18 U.S.C. § 3161 et seq. (the Speedy Trial Act) and related provisions.

22. C F-N Any dismissal of counts or agreement to forego filing charges is conditional upon final resolution of this matter. If this agreement is revoked or defendant's conviction is ultimately overturned, the United States retains the right to reinstate previously dismissed counts and to file charges that were not filed because of this agreement. Dismissed counts may be reinstated and uncharged offenses may be filed if: (1) the plea agreement is revoked, or (2) defendant successfully challenges defendant's conviction through a final order in any appeal, cross-appeal, habeas corpus action, or other post-conviction relief matter. A final order is an order not subject to further review or an order that no party challenges. The United States may reinstate any dismissed counts or file any uncharged offenses within 90 days of the filing date of the final order. Defendant waives all constitutional and statutory speedy trial rights defendant may have. Defendant also waives all statute of limitations or other objections or defenses defendant may have related to the timing or timeliness of the filing or prosecution of charges referred to in this paragraph.

## WAIVER OF APPEAL

23. C F-N After conferring with defendant's attorney and after being advised of defendant's appeal rights, defendant knowingly and voluntarily waives defendant's right to appeal the conviction and the sentence imposed. Defendant also waives the right to file post-conviction relief actions, including actions pursuant to 28 U.S.C. § 2255, 28 U.S.C. § 2241, *coram nobis*, and motions to reconsider or reduce defendant's sentence. Should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to defendant's offenses and explicitly make such an amendment retroactive, the government agrees that it will not assert this waiver as a bar to defendant filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2). However, if defendant files such a motion, the government reserves the right to oppose the motion on any other grounds, and it reserves the right to assert this waiver as a bar to an appeal from the district court's decision

Plea Agreement
United States v. Cristobal Francisco-Nicolas
November 26, 2019
Page 12

regarding the motion. Defendant retains the right to appeal or contest defendant's sentence in the following limited circumstances: (1) if the sentence is not in accordance with this plea agreement; (2) if the sentence imposed exceeds the maximum statutory penalty; and (3) if the sentence is constitutionally defective. This waiver does not, however, prevent defendant from challenging the effectiveness of defendant's attorney after conviction and sentencing. Defendant does not have any complaints at this time about the effectiveness of defendant's attorney. The waivers set out above relate to any issues that now exist or that may arise in the future. Defendant agrees to these waivers in order to induce the government to accept the provisions and stipulations of this plea agreement, to avoid trial, and to have defendant's case finally concluded. Defendant understands that, at the conclusion of the sentencing hearing, the Court will note defendant's appeal rights are limited by this waiver. No assurances or promises have been made by any party as to what defendant's ultimate sentence will be.

## ACKNOWLEDGMENT OF DEFENDANT'S UNDERSTANDING

24. *CFN* Defendant acknowledges defendant has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. Defendant has discussed the case and defendant's constitutional and other rights with defendant's attorney. Defendant understands that, by entering a plea of guilty, defendant will be giving up the right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in defendant's defense; to remain silent and refuse to be a witness by asserting defendant's privilege against self-incrimination; and to be presumed innocent until proven guilty beyond a reasonable doubt. Defendant agrees defendant's attorney has represented defendant in a competent manner and has no complaints about that lawyer's representation. Defendant states defendant is not now on or under the influence of, any drug, medication, liquor, or other substance, whether prescribed by a physician or not, that would impair defendant's ability to fully understand the terms and conditions of this plea agreement.

25. *CFN* Defendant acknowledges defendant is entering into this plea agreement and is pleading guilty freely and voluntarily because defendant is guilty and for no other reason. Defendant further acknowledges defendant is entering into this agreement without reliance upon any discussions between the government and defendant (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea agreement), and without threats, force, intimidation, or coercion of any kind. Defendant further acknowledges defendant's understanding

Plea Agreement
United States v. Cristobal Francisco-Nicolas
November 26, 2019
Page 13

of the nature of each offense to which defendant is pleading guilty, including the penalties provided by law.

26. C F-N Defendant further understands defendant will be adjudicated guilty of each offense to which defendant will plead guilty and will thereby be deprived of certain rights, including, but not limited to, the right to vote, to hold public office, to serve on a jury, and to possess firearms and ammunition. Defendant understands the government reserves the right to notify any state or federal agency by whom defendant is licensed, or with whom defendant does business, of the fact of defendant's conviction.

## **VERIFICATION**

27. C F-N This letter constitutes the entire agreement between the parties. No other promises of any kind, express or implied, have been made to defendant by the United States or its agents. No additional agreement may be entered into unless in writing and signed by all parties. The agreement will not be deemed to be valid unless and until all signatures appear where indicated below.

If this agreement is acceptable, please have your client indicate acceptance by placing initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, defendant acknowledges defendant has read, fully understands, and agrees to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

Please complete the enclosed Consent to Proceed Before the Magistrate Judge. This document is needed to allow the Magistrate Judge to receive defendant's guilty plea.

Finally, please remember to pay the special assessment as agreed above.

Thank you for your cooperation.

Plea Agreement
United States v. Cristobal Francisco-Nicolas
November 26, 2019
Page 14

        Sincerely,

        PETER E. DEEGAN, JR.
        United States Attorney

        By, s/ Kevin C. Fletcher

        KEVIN C. FLETCHER
        Assistant United States Attorney

**ENCLOSURES:**
Special Assessment Payment Coupon
Consent to Proceed Before Magistrate Judge

The undersigned defendant, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

_____ 11/20/19   _____ 11/29/2019
CRISTOBAL FRANCISCO-NICOLAS  Date   KEVIN C. FLETCHER   Date
Defendant            Assistant United States Attorney

_____ 11/26/19   _____ 11/26/2019
MICHAEL K. WILLIAMS   Date   INTERPRETER   Date
Attorney for Defendant       Perla Alarcan-Flory